#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DOUGLAS NORMAN, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> TOWN AND COUNTRY HEATING ) <br> AND AIR CONDITIONING COMPANY, ) <br> LLC, et al., ) <br> ) <br> **Defendants.** ) | Case No. 24-cv-2537-KHV-TJJ |

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Production of Comparator Evidence of Similarly Situated Town & Country Technicians and Other Relevant Documents (ECF No. 77). Pursuant to Fed. R. Civ. P. 37 and D. Kan. Rule 37.1, Plaintiff asks the Court to overrule the objections of Defendant Town and Country Heating and Air Conditioning Company, LLC ("T&C") and order it to produce documents in response to his First Requests for Production ("RFPs"). T&C opposes the motion. As set forth below, Plaintiff's motion is granted in part and denied in part.

**I.   Background**

Plaintiff Douglas Norman brings this action against Defendants T&C and Mallory Mertz (collectively "Defendants"). Mertz is the owner of T&C. Plaintiff was employed by T&C in the spring of 2023, until his termination on January 8, 2024. Plaintiff claims his termination was a result of disability discrimination (Count I), retaliation for engaging in protected activity under the Americans with Disabilities Act (Count II), age discrimination (Count III), and retaliation for

opposing Defendants' alleged discriminatory actions under the Age Discrimination in Employment Act (Count IV).

Plaintiff further alleges that after his termination Defendants informed a potential new employer of a charge of discrimination he made to the EEOC. Plaintiff claims Defendants' disclosure resulted in the new employer withdrawing Plaintiff's job offer and amounted to tortious interference with a contract (Count V).[1] Plaintiff seeks damages in the form of front and back pay; compensatory and liquidated damages under the ADEA; punitive damages under the ADA; and costs and attorney's fees.[2]

Plaintiff served his First Requests for Production on February 19, 2025.[3] T&C served its responses and objection to the RFPs on April 22, 2025.[4] On May 1, 2025, Plaintiff sent a golden rule letter to T&C, and the parties discussed the issues on a telephone call on May 6, 2025. On May 16, 2025, the Court granted Plaintiff an extension of time, until June 22, 2025, to file a motion to compel to allow the parties to continue to confer regarding T&C's objections.[5] The parties then reached out to the Court to schedule a pre-motion conference pursuant to D. Kan. R. 37.1(a), and the Court held such conference on June 12, 2025.[6] At the conference, the Court provided its

---

[1] Plaintiff's Complaint states that this is the "Sixth Cause of Action." However, Plaintiff only pleads, in total, five causes as action, making his tortious interference claim Count V.

[2] Pl.'s Compl., ECF No. 1.

[3] Cert. of Service, ECF No. 18.

[4] Cert. of Service, ECF No 49.

[5] Order, ECF No. 58.

[6] Minute Entry & Order, ECF No. 66.

guidance to the parties.[7] The Court finds Plaintiff conferred in good faith with T&C and requested a pre-motion conference, all in compliance with Local Rule 37.1, prior to filing the subject motion.

On June 23, 2025, Plaintiff filed a Motion to Compel regarding RFP Nos. 2, 3, 6, 7, 9, 11, 12, 13, 14, 15, 16, 18, 20, 21, 25, and 28.  Plaintiff divides his motion into two categories: those RFPs that seek "comparator evidence for similarly situated technicians" (RFP Nos. 2, 3, 7, 11, 14, 18, and 21), and "those of other documents T&C has failed to produce" (RFP Nos. 6, 9, 12, 13, 15, 16, 20, 23, 25, and 28).  Since the filing of the motion, Defendant T&C has supplemented its responses to Plaintiff's RFPs, and either produced additional documents, or clarified its objection to show all non-privileged documents had been produced despite its objections.

## II.    Applicable Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The requested information must be "nonprivileged, relevant, and proportional to the needs of the case to be discoverable."[8] Rule 26(b)(2)(C)(i) also requires the court to limit the frequency or extent of discovery otherwise allowed if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

---

[7] *Id.*

[8] *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

A party serving requests for production of documents may move for an order compelling discovery under Rule 37(a) if the objecting party fails to produce the documents requested under Rule 34.[9] The burden is on the nonmoving party to support its discovery objections with specificity and, where appropriate, with reference to affidavits and other evidence.[10]

If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined by Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm in responding to the request would outweigh the presumption of broad disclosure.[11] When the relevancy of the request is not readily apparent on its face, the party seeking discovery has the burden to shoe the relevancy of the request.[12] Relevancy determinations are made on a case-by-case basis.[13] A request for production is overly broad or unduly burdensome on its face if it "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information."[14]

### III.    Request Specific Objections

T&C asserts specific objections to Plaintiff's RFP Nos. 2, 3, 6, 7, 9, 11, 12, 13, 14, 15, 16, 18, 20, 21, 23, 25, and 28. Plaintiff's Motion groups these requests into two categories: those that

---

[9] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[10] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] *Id.*

[13] *Id.*

[14] *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006).

4

seek comparator evidence, and those of other documents T&C has refused to produce. The Court will address T&Cs objections in turn below.

### A. Comparator Evidence (RFP Nos. 2, 3, 7, 11, 14, 18, and 21).

Plaintiff seeks comparator evidence through RFP Nos. 2, 3, 7, 11, 14, 18, and 21. These requests seek:

RFP No. 2:
All customer complaints to the Company about any work performed by or not performed by *any service technician or similar service provider* (whether written or recorded), from January 1, 2022 through present.

RFP No. 3:
All positive customer reviews, ratings, or other comments to the Company about any work performed *by any service technician or similar service provider* (whether written or recorded) from January 1, 2022 through present.

RFP No. 7:
All record of verbal warnings, written warnings, terminations, or other discipline under the discipline policies in the Town & Country Company Handbook, *for any service technicians* employed by the Company for any time between January 1, 2022 to present.

RFP No. 11:
All Town & Country service technician schedules and payroll information for *service technicians* in Town & Country's employ at any time from January 1, 2023, through present.

RFP No. 14:
All performance reviews, evaluations, commendations, or criticisms related to *other service technicians* in Town & Country's employ at any time during Douglas A. Norman's employment with Town & Country Heating and Air Conditioning Company, LLC.

RFP No. 18:
All documents showing the hiring, employment status, date of birth, all contact information and addresses, performance reviews, time-off requests, unavailability requests, accommodation requests, warning, or discipline, of *similarly situated and other service technicians* hired before, during, and after Mr. Norman's employment, for the two years prior to Mr. Norman's hiring, to the present.

RFP No. 21:

> All records of disability accommodation requests made by *employees of Town & Country other than Mr. Norman*, including the outcomes of those requests, from January 1, 2023 to the present.[15]

In each of the above-listed requests, Plaintiff claims to seek comparator evidence. Plaintiff argues the discovery of comparator evidence must be allowed for Plaintiff to demonstrate his firing was pretextual, and because T&C denies Plaintiff was treated differently than other technicians. Plaintiff claims that to be able to make these showings, his access to "comparator evidence for similarly situated employees is absolutely critical."[16] Plaintiff argues summarily that all T&C technicians performed "the same job under the same supervisors" and "could not be more similarly situated because they were similarly situated in all respects."[17]

T&C objects to these requests on the bases of overbreadth and lack of relevance. T&C argues that while Plaintiff includes some of the relevant considerations in what makes employees "similarly situated," those considerations alone aren't enough.[18] T&C notes "[a] court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated."[19] Because Plaintiff fails to include such relevant considerations, T&C argues the RFPs in which Plaintiff seeks comparator evidence are overbroad and "encompass entirely irrelevant information and therefore do not constitute proper comparator evidence."[20]

---

[15] Pl.'s Mot. to Compel, ECF No. 77-1 (emphasis added).

[16] *Id.* at p. 3.

[17] *Id.*

[18] Defendants' Opposition to Pl.'s Mot. To Compel, ECF No. 84, p. 2.

[19] *Id.* at pp. 2–3 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).

[20] *Id.* at p. 3.

In employment discrimination cases, discovery of information related to similarly situated employees, or "comparators," may be relevant to establish adverse employment actions were pretextual.[21] Determining whether another employee is a relevant comparator is a fact-specific analysis.[22] "A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline."[23] "Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated."[24] In fact, "[t]he Court must take into account <u>all relevant circumstances</u> when evaluating whether an employee is similarly situated."[25]

In Plaintiff's RFPs he seeks various documents regarding "any service technician or similar service provider," "similarly situated service providers," and "other employees of [T&C] other than Mr. Norman." Plaintiff argues all service technicians are similarly situated to Plaintiff because they "perform the same job under the same supervisor." The Court disagrees; Plaintiff's view of similarly situated service providers is too simplistic. While all service technicians may perform generally the same job under the same supervisor, they may have very different work histories, skill levels, and/or experience. Plaintiff's argument, and the RFPs seeking comparator

---

[21] *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167–68 (10th Cir. 2007) ("Another common method [to show pretext] is a differential treatment argument, in which the plaintiff demonstrates that the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff" (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000))).

[22] *Oldridge v. City of Wichita*, No. 21-1284-EFM-BGS, 2025 WL 1191078, at *5 (D. Kan. Apr. 24, 2025) (citing *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005)).

[23] *Byrnes v. St. Catherine Hospital*, No. 21-2086-DDC-ADM, 2023 WL 2734229, at *11 (D. Kan. Mar. 31, 2023) (quoting *Green*, 420 F.3d at 1194).

[24] *Id.*

[25] *Oldridge*, 2025 WL 1191078, at *5 (citing *Green*, 420 F.3d at 1194).

evidence as drafted, are overly broad and fail to consider all relevant circumstances of Plaintiff and other service technicians' employment that could make them relevant comparators to Plaintiff.[26] For example, the RFPs are not limited to employees that have similar work histories, skill levels and/or experience to Plaintiff. Nor do they take into account specialized education or training, or any other relevant employment circumstances that may make another service technician a relevant comparator to Plaintiff under Tenth Circuit precedent.[27]

Plaintiff further argues his RFPs are proportional "given the $2.8M stakes and T&C's resources (15–20 employees)." But, this argument also misses the mark. Under Fed. R. Civ. P. 26(b)(1), the scope of discovery is limited to nonprivileged matter that is both relevant to a party's claims or defenses *and* proportional. Even though T&C may have only approximately 10 technicians, and 15–20 total employees, and production regarding all technicians may not be overly burdensome, Plaintiff is still not entitled to overly broad and irrelevant discovery.[28]

Elsewhere in Plaintiff's motion he states the comparator evidence could be used to show "T&C treated younger, non-disabled technicians, and those who did not engage in protected activities such as requesting an accommodation for disability, more favorably in terms of

---

[26] *See Green*, 420 F.3d at 1194 ("Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated.").

[27] *See Oldridge*, 2025 WL 1191078, at *5. *See also Green*, 420 F.3d 1189 at 1194; *Furr v. Seagate Techs., Inc.*, 82 F.3d 980, 986–87 (10th Cir. 1996) (finding Plaintiffs failed to show pretext in age discrimination case when statistical comparator evidence failed to compare similarly situated individuals and "Plaintiffs' statistics grouped all employees together regardless of specialty or skill and failed to take into account nondiscriminatory reasons for the numerical disparities"); *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996) (rejecting plaintiff's comparator evidence that she was required to dress more formally than her male counterparts because she failed to show they were similarly situated in terms of job function); *Wilson v. Utica Park Clinic, Inc.*, 76 F.3d 394 (10th Cir. 1996) (rejecting differential treatment evidence of a plaintiff discharged for repeated absences where the plaintiff failed to show that her fellow employees had comparable attendance records).

[28] *See* Fed. R. Civ. P. 26(b)(1).

scheduling, performance evaluations, accommodations, or discipline, including termination."[29] However, Plaintiff's RFPs, as written, are not actually limited in a manner that would produce the relevant and meaningful comparator evidence Plaintiff seeks. Instead, Plaintiff's RFPs are directed at all service technicians who may or may not be similarly situated, and are entirely too broad in scope generally, so as to encompass irrelevant evidence that does not constitute relevant comparator evidence.[30]

For example, in RFP 7, Plaintiff seeks "verbal warnings, written warnings, terminations, or other discipline . . . for any service technicians . . . ."[31] And for example, in RFP 1, Plaintiff seeks "performance reviews, evaluations, commendations, or criticisms related to other service technicians . . . ."[32] Yet, "to prove a discrimination claim, a plaintiff may offer 'evidence that he was treated differently from other *similarly situated*, nonprotected employees who *violated work rules of comparable seriousness*.'"[33] Plaintiff's requests are neither limited to "similarly situated" employees, nor to those "who violated work rules of comparable seriousness" or experienced criticisms of comparable seriousness. Such breadth in drafting will not produce entirely relevant— or likely even useful—comparator evidence; such requests would undoubtedly produce documents

---

[29] Pl.'s Mot. to Compel, ECF No. 77, p. 4.

[30] *Compare Oldridge*, 2025 WL 1191078, at *5 (finding RFPs did not seek relevant comparator evidence when plaintiff's requests contained no limiting language and sought other officers' disciplinary records for acts of dishonesty without and consideration of whether the conduct was comparable), *with Byrnes*, 2023 WL 2734229, at *11 (finding RFPs did seek relevant comparator evidence when plaintiff sought information regarding three other physicians that "were required to abide by the same professional standards for providing health care to patients and appear to have been subject to the same hospital policies concerning those standards. All were or should have been subject to the Hospital's peer-review and risk-management processes, and accountable to the Medical Staff for maintaining Hospital privileges.").

[31] Pl.'s First Request for Production, ECF No. 77-1.

[32] *Id.*

[33] *Byrnes*, 2023 WL 2734229, at *11 (quoting *Green*, 420 F.3d at 1194) (emphasis added); *Oldridge*, 2025 WL 2229967, at *2.

9

that are irrelevant and far beyond the scope of this action. Therefore, the Court finds that "all service technicians" are not relevant comparators and that the scope of Plaintiff's requests are overly broad, sustains T&C's objections, and denies Plaintiff's Motion to Compel with regard to RFP Nos. 2, 3, 7, 11, 14, 18, and 21.

### B. Other Requests for Production (RFPs No. 6, 9, 12, 13, 15, 16, 20, 23, 25, and 28)

The second category in Plaintiff's motion to compel concerns what Plaintiff refers to as "other documents [Defendant] T&C has refused to produce." In their response to the motion, with regard to RFP Nos. 12 and 13, T&C states "all policies and handbooks in effect during the term of Plaintiff's employment through present as well as '[a]ll performance reviews, evaluations, commendations, or criticisms' of Plaintiff's employment" have been produced.[34] Plaintiff's Reply does not dispute this. Therefore, RFPs Nos. 12 and 13 are no longer at issue. Further, in T&C's Third Supplemental Responses in response to RFP No. 20, T&C states it "has produced all documents in its control, possession, or custody" and has not withheld any documents on the basis of its objection. Plaintiff's Reply does not dispute this. Therefore, RFP 20 is no longer at issue. The Court addresses the remaining requests below:

#### i. Request 6

Plaintiff's RFP 6 seeks:

> All communications, written, recorded, transcribed, or otherwise preserved, including without limitation emails, text messages, letters, memos, or notes regarding Mr. Norman, between or among current or past Town & Country personnel and between any third party reference checkers, references, witnesses, potential witnesses, background sources, or other third parties.

---

[34] Def. T&C's Statement in Opposition to Pl.'s Mot. to Compel, ECF No. 84, p. 4; *see also* Def. T&C's Third Supplemental Responses and Objections to Plaintiff's First Requests for Production, ECF No. 84-4.

T&C objects to the interrogatory on the basis that it is so broad it encompasses attorney-client privileged communication and work product. T&C argues the inclusion of the phrase "other third parties" necessarily includes communications with defense counsel regarding the subject. T&C indicates it has produced several documents in response to RFP 6, and has provided Plaintiff with a privilege log which contains a description of documents withheld on the basis of privilege.

Plaintiff argues T&C has improperly withheld documents on the basis of privilege because an attorney's "communications with third parties like witnesses or reference checkers waive privilege unless they are essential to legal advice, which Defendant [T&C] has not shown."[35] In his motion, Plaintiff ultimately argues that T&C's reading of the phrase "other third parties" to include defense counsel is inappropriate given that "courts in this district have consistently distinguish[ed] attorney-client communications from communications with 'third-parties.'"[36]

While the court agrees that communications with third parties generally waive attorney client privilege,[37] the parties' disagreement whether to consider defense counsel a "third party" for purposes of responding to the RFP appears to be for naught. T&C's privilege log does not indicate it is withholding any communications with third-party witnesses or reference checkers. And ultimately, T&C affirmatively states in response to RFP 6, it has "produced all non-privileged documents within its possession, custody, or control between T&C personnel and third parties, excluding Defense Counsel, which reference Plaintiff by name" and "has not withheld any non-privileged communications between T&C personnel and third parties, excluding Defense Counsel,

---

[35] Pl.'s Mot. to Compel, ECF No. 77, p. 8.

[36] Pl.'s Reply to Def.'s Opposition to Mot. to Compel, ECF No. 89, p. 3.

[37] *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009) ("Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client disclosures the substance of an otherwise privileged communication to a third party.'" (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990))).

which reference Plaintiff by name on the basis of its objections."[38]  Because T&C has produced all communications with all "third parties" except defense counsel, the Court finds T&C has fully responded to Plaintiff's RFP No. 6, sustains its objections with regard to this request, and will not order further production.

### ii.    Request 9

Plaintiff's RFP 9 seeks: "All of the Titan data and information regarding Mr. Norman's jobs and any reviews or complaints related thereto."  T&C explains that every Titan file for a client includes:

> full job history, time sheets and dispatch activity for each job, contact and billing information, stored credit card and bank account details, photos and videos, all past invoices, estimates, and proposals, internal job notes related to collection efforts, internal tags (has dog, has gate code, etc.), notes about home access and parking, referral sources, equipment information, equipment registration documents, maintenance contract documentation, and insurance documents.[39]

T&C objects to the request as overbroad.

Plaintiff's Motion to Compel does not respond Defendant's objection directly, and the only statement regarding Titan data contained in the entire motion states the request is relevant and proportional to the needs of the case "to disprove T&C's claims of an 'influx' of customer complaints."[40]  In the Complaint, Plaintiff states he "performed at least 800 service calls" during his employment.[41]  The Court sustains T&C's objection and finds the request to be inherently

---

[38] Def. T&C's Third Supplemental Responses and Objections to Plaintiff's First Request for Production, ECF No. 84-8, p. 8.

[39] Def. T&C's Statement in Opposition to Pl.'s Mot. to Compel, ECF No. 84, p. 5.

[40] Pl.'s Mot. to Compel, ECF No. 77, p. 7.

[41] Pl.'s Compl., ECF No. 1, p. 2.

overbroad, as it requests Titan data with no limitations, and would be unduly burdensome to require production as to the approximately 800 jobs Plaintiff completed during his employment.

### iii.    Request 15

Plaintiff's RFP 15 seeks:

> All documents, including without limitation emails, text messages, notes, letters, voicemails or other communications, recordings, minutes or notes from any meetings, and other electronic, typed, or written data, files, papers or the like, concerning the alleged customer complaints cited in the write-up and action plan against Douglas A. Norman, including without limitation:
> a. Dates and times of service calls related to the alleged complaints
> b. Names, contact information, addresses, and statements for any customers who allegedly complained, including without limitation correspondence or notes related to these complaints.
> c. Correspondence or notes among Town & Country personnel, management, or owner, related to these complaints.

T&C objects to the request on the basis that it is so overly broad it necessarily encompasses attorney-client privileged communications and attorney work-product, it is not relevant to the claims or defenses herein, and is not proportional to the needs of the case. T&C lists several documents that were produced in response to the requests, and refers Plaintiff to the privilege log for those documents withheld on the basis of privilege or work-product.

Plaintiff's Complaint alleges T&C fired him after putting him on an "Action Plan" based on alleged customer complaints. Plaintiff alleges T&C refused to provide him with any information regarding the alleged customer complaints such as which service calls resulted in customer complaints, or what the customer complaints actually contained. Plaintiff instead believes the "underlying implication of the write-up and action plan was that Mr. Norman was too old and

slow . . . ."[42]  Ultimately, Plaintiff alleges the write-up and action plan were used to target him for termination "to make way for younger service technicians."[43]

The Court finds the information Plaintiff seeks regarding the write up and action plan is relevant to the claims of this action.  Further, the Court does not find that the request is overly broad or unduly burdensome.  Plaintiff lists items by category, and describes them with reasonable particularity, and the Court does not find that this makes "arduous the task of deciding which of numerous documents may conceivably fall within the scope."[44]

Further, the Court does not find T&C's objection on the basis of privilege likely to be pertinent with regard to the responsive documents generally.  The essential elements of the attorney-client privilege are: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived."[45]  The party asserting the privilege bears the burden of establishing it exists.[46]  Plaintiff was placed on the action plan on January 5, 2024, and was terminated three days later, January 8, 2024.  The Notice of Right to Sue was dated August 21, 2024, and this action was filed on November 19, 2024.  The first entry in Plaintiff's privilege log is dated May 14, 2024, and refers to communication between defense

---

[42] Pl.'s Compl., ECF No. 1, p. 3.

[43] Pl.'s Compl., ECF No. 1, p. 6.

[44] *Audiotext Commc'n Network, Inc. v. US Telecom, Inc.*, No. CIV.A.94-2395, 1995 WL 625962, at *6 (D. Kan. Oct. 5, 1995).

[45] *EEOC v. Chipotle Servs., Inc.*, No. 23-2439-KHV-BGS, 2024 WL 3677408, at *7 (D. Kan. Aug. 1, 2024) (citing *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *5 (D. Kan. Jan. 6, 1998)).

[46] *Id.*

counsel and Defendant Mertz "regarding representation and legal advice regarding the claim."[47] T&C fails to show how the request—seeking customer complaints used to justify the write up and action plan that occurred in January 2024, nearly five months before defense counsel's first communication with Defendant Mertz regarding representation—is likely to elicit documents protected by the attorney-client privilege (or for that matter entitled to work product protection, which T&C also asserts as a basis for its objections). Simply stated, the Court finds T&C has not shown that the request is likely to encompass responsive documents that were made for the purpose of seeking legal advice.

The Court notes that in its response to the motion T&C states it has produced all documentation within its possession, custody, or control "relevant to the customer complaints cited in the write-up of Plaintiff" and directs the Court to Exhibit G.[48] Exhibit G is T&C's Second Supplemental Responses to Plaintiff's RFPs. Exhibit G does not contain a supplement to Defendant T&C's response to RFP 15. Further, based on the responses and supplemental responses provided, the Court cannot find where T&C has supplemented its response to RFP 15 to affirmatively state all responsive documents have been produced, and are not being withheld on the basis of the objections. To the extent T&C actually has already produced all documents responsive to RFP 15, it must amend its response to clarify as such. Therefore, the Court overrules T&C's objections and orders it to serve an amended response to RFP 15 either (1) stating all nonprivileged responsive documents are being produced, or (2) confirming that it has already produced all nonprivileged responsive documents. To the extent responsive documents are being withheld on the basis of

---

[47] Priv. Log of Defs., ECF No. 84-9.

[48] Def. T&C's Statement in Opposition to Pl.'s Mot. to Compel, ECF No. 84, p. 4.

privilege or work product protection, T&C must so indicate and properly identify them on their privilege log.

### iv. Request 16

Plaintiff's RFP 16 seeks:

> All documents, including without limitation emails, text messages, notes, letters, voicemails or other communications, recordings, minutes or notes from any meetings, and other electronic, typed, or written data, files, papers or the like, that reflect or materially pertain to the decision-making process regarding the termination of Douglas A. Norman.

T&C objects on the basis that the request is so overly broad that it encompasses attorney-client privileged communications and work product. Defendant produced a single document in response to the RFP and otherwise directed Plaintiff to its privilege log.

Again, the Court finds this request is relevant and proportional to the needs of the case. Additionally, the firing of Plaintiff occurred in January 2024, and the first entry on the privilege log regarding representation in this matter does not occur until over five months later. The request seeking documents concerning the decision-making process involved in the termination of Plaintiff in January 2024 is not so broad to necessarily include privileged documents, and T&C has not shown the request is likely to encompass a significant number of documents that were made for the purpose of seeking legal advice. The Court further finds that T&C has failed to support its work product objections and show how such documents were created in anticipation of litigation. Therefore, the Court overrules Defendant T&C's objection and orders it to produce all documents in its possession, custody, or control responsive to Plaintiff's RFP 16.

The Court notes that in T&C's response to the motion it states it has produced all documents within its possession, custody, or control that "reflect or materially pertain to the decision-making

process regarding the termination of Plaintiff," and again refers to Exhibit G.[49]  T&C's Second Supplemental Response to RFP 16 does not affirmatively state all responsive documents within its possession, custody, or control have been produced, and does not clarify if any documents are being withheld on the basis of the objections.  Therefore, the Court overrules T&C's objections and orders it to serve an amended response to RFP 16 either (1) stating that all nonprivileged responsive documents are being produced, or (2) confirming it has already produced all nonprivileged responsive documents. To the extent responsive documents are being withheld on the basis of privilege or work product protection, T&C must so indicate and properly identify them on their privilege log.

### v.     Request 23

Plaintiff's RFP 23 seeks:

> All communications between Defendants or anyone acting on behalf of either Defendant and any other heating and cooling companies, other companies, or individuals regarding Douglas A. Norman's employment history, performance, or the EEOC charge filed by him.

T&C objects to this request on the bases that it is so broad as to encompass privileged documents and work product.  Defendant produced several documents but otherwise directed Plaintiff to its privilege log.

The Court agrees with T&C that the request is drafted so broadly it could encompass privileged communications, as Plaintiff seeks *all* communication with *any individuals*, including defense counsel, regarding Plaintiff's employment history, performance or the EEOC charge filed by him without temporal or any other limitation.  Further, T&C's response indicates that it has

---

[49] Def. T&C's Statement in Opposition to Pl.'s Mot. to Compel, ECF No. 84, p. 4; Def. T&C's Second Supplemental Responses and Objections, ECF No. 84-7, p. 6.

only withheld documents on the basis of its privilege and work product objections and produced all other documents responsive to the request.

Finally, in response to RFP No. 6, T&C has already affirmatively stated it "produced all non-privileged documents within its possession, custody, or control between T&C personnel and third parties, excluding Defense Counsel, which reference Plaintiff by name."[50] Such documents are also responsive to RFP No. 23, and the Court finds the request to be duplicative.[51] The Court therefore sustains T&C's objection.

### vi. Request 25

Plaintiff's RFP 25 seeks:

> All documents related to the forfeiture of Town & Country Heating and Air Conditioning Company, LLC's status as a Kansas Limited Liability Company, including any correspondence with the Kansas Secretary of State's office, including reinstatement, and internal communication among anyone acting on behalf of either Defendant.

T&C objects to the request on the bases that the request encompasses privileged documents and work product, but qualified its response, stating that without waiving its objections, it had no documents responsive to this request. Plaintiff challenges T&C's assertion that it has no responsive documents. As exhibit D to his motion, Plaintiff attaches a Certificate of Reinstatement signed by Defendant Malory Mertz. The document appears to have been obtained from the Kansas Secretary of State.

---

[50] Def. T&C's Third Supplemental Responses and Objections to Plaintiff's First Request for Production, ECF No. 84-8, p. 8.

[51] *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

T&C does not address Plaintiff's exhibit D, or otherwise respond to Plaintiff's assertion "T&C is hiding the ball" in its response.[52] The response also does not reassert that Defendant T&C has no documents responsive to this request. Further, the privilege log does not indicate specific entries were made regarding this request, and there appears to be no entries related to T&C's status as an LLC. Therefore, the Court overrules T&C's objections and orders it to serve an amended response to this request either (1) producing all responsive documents, or (2) confirming that it has no documents in its custody, control or possession that are responsive to this request.[53]

### vii. Request 28

Plaintiff's request 28 seeks "[c]opies of any and all documents or things [T&C] reasonably expects to offer as evidence in this matter." The Court sustains T&C's objection to the request. Plaintiff is directed to the scheduling order entered in this matter setting various deadlines for discovery and supplementation of T&C's Rule 26 disclosures.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART as set out above.

**IT IS FURTHER ORDERED** that T&C shall amend its responses to RFPs 15, 16, and 25 as set out above and produce all additional responsive documents **within fourteen (14) days** of this order.

---

[52] Pl.'s Mot. to Compel, ECF No. 77, p. 9.

[53] *See Cardenas v. Dorel Juv. Grp*, 232 F.R.D. 377, 385 (D. Kan. 2005).

**IT IS SO ORDERED.**

Dated September 2, 2025, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U. S. Magistrate Judge